UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

––––––

CURTIS L. BAKER,

                Plaintiff,                        Case No. 1:15-cv-68

v.                                            Honorable Robert J. Jonker

BONITA HOFFNER et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Curtis Baker presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF).  He sues the following LCF officials:  Warden Bonita Hoffner; Deputy Warden Linda Beckwith; and Acting Lieutenant (unknown) Losinski.

Plaintiff alleges that he was charged and convicted, without due process of law, of a Class II misconduct for possession of stolen property and theft from food services.  Although Plaintiff does not actually recite the facts in his complaint, it appears from the context of Plaintiff's arguments and the attachments to the complaint that, on November 21, 2014, Correctional Officer Kast charged Plaintiff for possession of stolen property and theft.  According to the misconduct report, Aramark employee (unknown) Lamp reported to Kast that she had observed Plaintiff go into the bathroom with a sanitizer bucket and leave shortly thereafter without the bucket.  (*See* Ex. B to Compl., docket #1-1, Page ID#12.)  Kast entered the bathroom and found the sanitizer bucket with a small amount of orange juice in the bottom.  Kast also found an empty carton of orange juice concentrate in the garbage can.  Kast went into the dining room to find Plaintiff and then followed Plaintiff into the dish-tank room.  Kast observed Plaintiff reach into the front of his pants and then stop in front of the garbage can.  Kast asked Plaintiff what he was doing, and Plaintiff responded that he was just throwing out his garbage.  Kast searched both Plaintiff and the garbage can, and he found a plastic bag of orange-juice concentrate in the garbage can.

At a hearing held on December 3, 2014, Defendant Losinski found Plaintiff guilty of the misconduct charge and sanctioned him to ten days' loss of privileges.  Plaintiff also lost his

prison job in the food-services department.  Plaintiff appealed the conviction.  On December 30, 2014, Defendant Beckwith upheld Losinski's decision.

Plaintiff complains that he collected the statements of eleven witnesses, all of whom declared that Officer Kast never searched Plaintiff at all; instead, Officer Blomstrand conducted the search.  In addition, Plaintiff claims that he was not present during the misconduct hearing and that Defendant Losinski falsely stated in the hearing report both that Plaintiff was present and that Plaintiff had admitted to making the orange juice that morning.  Plaintiff complains that none of his witnesses were interviewed and that, because the hearing was held in Plaintiff's absence, he was deprived of his right to present a defense, in violation of due process.

In addition, Plaintiff alleges that his right to due process was violated by the guilty finding, because no evidence existed to support the decision.  He argues that Losinski never looked at the video footage and no fingerprints were taken from the orange-juice container.  Plaintiff suggests that, in the absence of corroborating evidence, Officer Kast's statement was insufficient to support the misconduct conviction.

Plaintiff also argues that, even if he had admitted to making the orange juice, such an admission did not prove his guilt on the charge of possession of stolen property or theft.  Plaintiff claims that all thirteen of the juice-concentrate boxes were accounted for, because his witnesses affirmed that two boxes had been sent to A Unit and eleven were counted by Lamp before Prisoner Ward discarded them.  Plaintiff also complains that many prisoners had entered the bathroom during the morning shift and that Defendants had taken no photograph of the sanitizer bucket that Plaintiff supposedly carried into the bathroom.  Plaintiff contends that, in these circumstances, the evidence was insufficient to support the conviction.

Finally, Plaintiff contends that a white prisoner, Prisoner Nagy, was charged under similar circumstances with the theft of onions, but Nagy was found not guilty by Losinski. Plaintiff attaches to his complaint a copy of the misconduct hearing report for possession of stolen property and theft. Defendant Losinski denied the misconduct charge, concluding that the ticket was not supported. Plaintiff suggests that, based on the difference in outcomes, Defendant Losinski may have been discriminating on the basis of race.

For relief, Plaintiff demands compensatory and punitive damages.

### Discussion

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

- 4 -

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that the Class II misconduct charges against him were unproved and that he did not receive a hearing that comported with due process.[1] A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct, and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of

_____

[1]Plaintiff at no point denies that he committed the misconduct. He merely argues that he did not receive due process and that the evidence did not support the misconduct decision.

a Class I misconduct.  (*See* Policy Directive 03.03.105, ¶ AAAA).[2]  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).  Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Plaintiff's allegations concerning race discrimination also fail to state a claim.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.  However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ."  *Price v. Johnston*, 334 U.S. 266, 285 (1948).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)

---

[2]Indeed, Plaintiff does not even allege that he was denied good time or disciplinary credits as a result of his Class II misconduct conviction.

(citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).   To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).   Such discriminatory purpose must be a motivating factor in the actions of the defendants.   *Id.* at 265-66.

Plaintiff's allegation of discriminatory treatment is wholly conclusory.   Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.   *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.   Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence.   *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination).   First, Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose.   *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)); *see also Davis*, 679 F.3d at 440.   Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), because he fails to allege that the white prisoner was similarly situated in all relevant respects.   *See Umani*, 432 F. App'x at 458.

To be a similarly-situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'"   *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).   Plaintiff claims that Prisoner Nagy also was charged with possession of stolen property or theft for allegedly

taking food into the kitchen restroom. However, significant differences existed between the circumstances surrounding Nagy's misconduct charge and those surrounding Plaintiff's misconduct charge. (*See* Ex. C to Compl., docket #1-1, Page ID#16.) Aramark employee Lamp stated that she saw Prisoner Nagy with a white plastic bag in his coat when he went to the restroom. When the restroom was searched sometime after Nagy left it, three onions were found, wrapped in a white apron. Nagy was never searched and no other evidence suggested that he had possession of the onions. Moreover, the onions were found wrapped in an apron, not in the white plastic bag Nagy was alleged to have possessed when he entered the restroom. Defendant Losinski concluded that, under the circumstances, the evidence was insufficient to demonstrate that Nagy had stolen the onions.

In contrast, Plaintiff was witnessed under suspicious circumstances at two sites. Lamp saw Plaintiff carry a sanitizer bucket into the restroom and saw him come out of the restroom without it. Immediately thereafter, Defendant Kast went into the restroom and found the bucket, which contained orange-juice concentrate. A juice-concentrate box was found in the garbage. After following Plaintiff through the dining room, Kast saw Plaintiff remove something from the front of his pants as Plaintiff walked toward a trash can. Another juice-concentrate box was found in the dish-tank-room trash, next to which Plaintiff was standing.

In light of these distinctions, Plaintiff and Nagy were not similarly situated in all relevant respects. The cumulative circumstances far more strongly implicated Plaintiff in unauthorized possession of food. As a consequence, Plaintiff fails to state an equal protection claim against Defendant Losinski for reaching a different result in the two cases.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:    February 26, 2015                    /s/ Rob ert J. Jonker
                                               ROBERT J. JONKER
                                               UNITED STATES DISTRICT JUDGE

- 9 -